E-FILED
Tuesday, 31 August, 2021  11:06:45 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| HANNIBAL HENRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-cv-1234-JES-JEH |
| | ) |
| CITY OF CREVE COEUR, OFFICER | ) |
| DANTON ALTHISER, and OFFICER | ) |
| N. HAHN, | ) |
| | ) |
| Defendants. | ) |

## ORDER AND OPINION

This matter is now before the Court on the Motion (Doc. 19) for Summary Judgment by Defendants Officer Danton Althiser, Officer N. Hahn, and City of Creve Coeur. Plaintiff Henry Hannibal has filed a Response (Doc. 22) in Opposition and Defendants filed a Reply (Doc. 23). For the reasons set forth below, Defendants' Motion (Doc. 19) is GRANTED.

### BACKGROUND

Unless otherwise noted, the following facts are undisputed by the Parties.[1] Around 4:00 a.m. on July 22, 2018, a fight broke out at the Club Cabaret strip club in Creve Coeur, Illinois. Doc. 19, at SOF ¶ 1. The fight involved multiple white males and multiple black males. *Id.* at SOF ¶ 2. Around that same time, the Tazewell County Consolidated Communications ("TC3") received a 911 emergency call from a woman stating that she was at Club Cabaret. *Id.* at SOF ¶ 3, 6. TC3 is a county-wide agency that receives 911 calls then dispatches them to police departments in Tazewell County. *Id.* at SOF ¶ 4. Like all calls, TC3 recorded the 911 and dispatch calls regarding the strip club that night. *Id.* at SOF ¶ 5.

---

[1] Although Plaintiff rephrases the wording in Defendants' SOF ¶ ¶ 1 2, 3, 7, 8, 14, 24, 25, 30, all these facts are listed in his "undisputed material facts section," therefore the Court considers them undisputed. *See* Local Rule 7.1(D)(2)(b) (describing the appropriate use of subsections in a response to a motion for summary judgment).

In the July 22 call, the 911 caller requested a police response. *Id.* at SOF ¶ 12.[2] She reported that a fight broke out between a white male and black male in the parking lot of the strip club. *Id.* at SOF ¶ 7. She stated the white male was badly beaten and the black male stated he had a handgun in his car, then walked towards a car. *Id.* at SOF ¶ 8-9. The 911 caller first stated the black male was getting into a Sports Utility Vehicle ("SUV") then quickly stated he was getting into a black or blue four-door car. *Id.* at SOF ¶ 11.[3] The caller also stated she could see the license plate of the car had the first four letters as "HANN," then said the letters may also be "HANH." *Id.* at SOF ¶ 11.[4]

TC3 then relayed the information from the caller through dispatch to the Creve Coeur Police Department. *Id.* at SOF ¶ 13. Because of the 911 call, Officers Dan Althiser and Nicholas Hahn (collectively, "the Officers") were dispatched to the strip club. *Id.* at SOF ¶ 14. Hahn and Althiser identified a vehicle with the license plate beginning with "HANN" that was leaving the parking lot of strip club. *Id.* at SOF ¶ 15.[5] The Officers later learned that Plaintiff, Hannibal Henry, was driving that vehicle. *Id.* at SOF ¶ 18. Upon finding Plaintiff's car, the Officers conducted a traffic stop. *Id.* at SOF ¶ 16.

When approaching Plaintiff's car, the Officers drew their duty weapons and pointed them at the car while ordering the driver out of the car. *Id.* at SOF ¶ 17. After Plaintiff got out of his

---

[2] The Court has reviewed the recordings of these calls submitted with Defendants' summary judgment Motion.

[3] Plaintiff "denies the fact as written" because the 911 caller first stated the black male was getting into an SUV. Doc. 22, at 5. But he does not dispute that the caller said the above, therefore, Plaintiff should have marked SOF ¶ 10 as undisputed then added the additional fact regarding the caller's statement to his "additional material facts section" rather than improperly characterizing SOF ¶ 10 as disputed. The Court will consider Plaintiff's additional material fact despite his failure to follow Local Rule 7.1(D)(2)(b)(6) because it is supported by the recorded 911 call.

[4] Same as the above footnote. Plaintiff improperly characterized SOF ¶ 11 as disputed even though he does not dispute the caller said this but would like to add that the caller also said the license plate may have had the letters "HANH." Despite Plaintiff's failure to follow the local rules, the Court will consider his additional material fact because it is supported by the undisputed audio recording of the 911 call described in SOF ¶ 5.

[5] Plaintiff only disputes SOF ¶ 15 on the basis that this vehicle "matched the description the 911 caller." Therefore, the above portion is undisputed. As to whether it matched the description, the Court will consider that argument in the discussion section of this Opinion.

car, Officer Hahn believed Plaintiff showed signs of intoxication including, a strong odor of alcohol from his breath, slurred speech, difficulty maintaining balance, and glassy red eyes. *Id.* at SOF ¶ 19. [6] Hahn also believed Plaintiff was intoxicated and had been driving under the influence. *Id.* at SOF ¶ 20.[7] After the scene was secured, Officer Althiser went back to Club Cabaret to interview witnesses who corroborated the 911 caller's report. *Id.* at SOF ¶ 21.[8]

After Althiser returned to the scene of the traffic stop, the Officers brought Plaintiff to the Creve Coeur Police Department, where they further observed him. *Id.* at SOF ¶¶ 22-24. Plaintiff was recorded by video at the police station. *Id.* at SOF ¶ 25. Although Plaintiff disputes that he presented in this way, during this interaction, Althiser observed that Plaintiff smelled of alcohol, had slurred speech, and had poor balance. *Id.* at SOF ¶ 26. Likewise, Hahn noted signs of impairment on the part of Plaintiff, including an odor of alcohol, slurred speech, and poor balance. *Id.* at SOF ¶ 27.[9] At this time, Althiser requested Plaintiff to provide a breathalyzer sample or participate in field sobriety tests to determine any alcohol intoxication; Plaintiff refused both. *Id.* at SOF ¶ 28-29.[10] After he refused, Plaintiff was informed that he was under arrest for driving under the influence. *Id.* at SOF ¶ 30. Thereafter, Plaintiff began to argue with

---

[6] Plaintiff disputes that he was intoxicated and that he was exhibiting these signs of intoxication. Doc. 22, at 6.

[7] Same as above. Plaintiff disputes that he was intoxicated and that he had been driving under the influence.

[8] Plaintiff admits that this happened but objects to the Officer's reliance on statements from witnesses because they are hearsay. Doc. 22, at 6. Plaintiff's objection is misplaced. As a general matter, probable cause can be based on hearsay depending on the reliability of the source, but Defendants do not address this issue. *See United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014). Regardless, an actual statement is not being offered and the fact that witnesses corroborated the 911 caller is not offered to show probable cause to arrest Plaintiff for the reported battery at Club Cabaret. Plaintiff was never charged with battery and as discussed in this Opinion, the Officers already had reasonable suspicion to pull over Plaintiff's car based on the 911 caller.

[9] Plaintiff also disputes these observations.

[10] Plaintiff disputes SOF ¶¶ 28-29 because "Plaintiff denies he was intoxicated by alcohol." However, the proposed fact has nothing to do with whether Plaintiff was actually intoxicated. Thus, SOF ¶¶ 28-29 are not really disputed, and Plaintiff again fails to comply with summary judgment rules. Argumentative responses that simultaneously deny the veracity of a defendant's proposed material fact and present separate, additional facts risk the possibility that the Court will consider defendant's proposed fact as undisputed. *See e.g., Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir. 2008).

the Officers and had to be restrained. *Id.* at SOF ¶ 31.[11] After the arrest, an inventory of

Plaintiff's vehicle revealed a half-empty bottle of Hennessy alcohol, two cigars containing a

green leafy substance confirmed as cannabis,[12] and a pill that tested positive as N-Ethylpentylone

which the Parties refer to as "molly."[13] *Id.* at SOF ¶ 32-34 (citing Doc. 19-2, at 3, 7).

    Ultimately, Plaintiff was charged with driving under the influence and driving without

headlights on. *Id.* at SOF ¶ 35. Subsequent to that charge, Plaintiff filed a motion to quash all

evidence of his arrest in Tazewell County Circuit Court, Case No. 2018-DT-267. *Id.* at SOF ¶ 36.

(citing Doc. 19-4). The motion was based on the grounds that the officer did not have reasonable

grounds to believe "that the defendant was committing or had committed the offense of driving

without headlights." Doc. 19-4, at 1. During the motion to quash hearing on November 9, 2018,

the Tazewell County State's Attorney did not present the audio of the 911 call to the court and

did not provide the video from the squad car[14] nor the video of Plaintiff's conduct at the Creve

Coeur Police Department. *Id.* at SOF ¶ 37-39.[15] The circuit court, without any stated reasoning,

granted Plaintiff's motion at the end of the hearing. *Id.* at SOF ¶ 40 (citing Doc. 19-6, at 27).

---

[11] Plaintiff's only disputes use of the term "combative" in Defendant's SOF ¶ 31. Thus, the above is not disputed.
[12] Plaintiff admits that the cannabis was found but denies that it is material and objects on grounds of foundation. Although it is highly likely the Officer would be able to provide the minimal foundation needed to assert that the substance was cannabis, Plaintiff is technically correct that Defendants needed to provide something more than "the substance was cannabis." *See e.g., United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (holding an officer's testimony that he smelled marijuana was "a simple and compelling foundation" for searching the defendant's car including the trunk); *United States v. Dominguez*, 992 F.2d 678, 681 (7th Cir. 1993) (reiterating the identity of a controlled substance, such as marijuana, in a criminal case can be proven by circumstantial evidence, including "lay-experience based on familiarity through prior use, trading, or law enforcement").
[13] Plaintiff does not dispute that the substance was found but objects to this fact on grounds of hearsay and foundation as to the test results. Althiser attested that he received a report from the Illinois State Crime Lab identifying one of the pills, which was confirmed as "molly," and submitted a copy of the laboratory report. While this type of evidence would be admissible at trial, Defendants did not provide an affidavit from someone at the crime lab to lay foundation for the report. Regardless, as Plaintiff notes, the results of the pill's composition is immaterial and the Court does not consider it.
[14] Oddly, neither Party has presented the footage mentioned in SOF ¶ 38.
[15] Plaintiff does not dispute SOF ¶ 37-39 but asserts that they are immaterial. *See* Doc. 22, at 8-9.

Plaintiff filed the instant Complaint on July 10, 2019. Doc. 1. Plaintiff brings three constitutional claims and three state law claims against Defendants: unreasonable seizure and excessive force claims under the Fourth Amendment (Counts I and II); a fabrication of evidence claim under the Fourteenth Amendment (Count III); and malicious prosecution, assault and indemnification claims under Illinois law (Counts IV, V, VI). Doc. 22, at SOF ¶ 20.

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). In resolving the motion, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In order to withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the evidence, however, is "merely colorable, or is not significantly probative" or merely raises "some metaphysical doubt as to the material facts," summary judgment may be granted. *Id.* at 249-50; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, in order to overcome the undisputed facts set forth in a defendant's motion for summary judgment, a plaintiff cannot rest on the allegations in his complaint but must

point to affidavits, depositions, or other evidence of an admissible sort that a genuine dispute of material fact exists between parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). "[I]f the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment." *Waldridge*, 24 F.3d at 920.

**DISCUSSION**

In order to withstand Defendants' summary judgment Motion, Plaintiff essentially relies on the disputed fact as to whether Plaintiff was intoxicated. But the answer to that question does not matter. Likewise, an assistant state's attorney failure to introduce relevant evidence at a suppression hearing does not mean probable cause for an arrest did not exist or that an individual was maliciously prosecuted. If anything, Plaintiff received a lucky break during the state court hearing. Rather than accepting that lucky break, he filed this lawsuit with a litany of claims.

In their Motion, Defendants generally argue that they are entitled to summary judgment because the 911 call gave the Officers reasonable suspicion to stop Plaintiff's vehicle and point their weapons at his car while approaching, and the Officers had probable cause to arrest Plaintiff for driving under the influence. Doc. 19. In Response, Plaintiff argues the Officers did not have probable cause to arrest him, the Officers had no lawful justification to point their firearms at Plaintiff, and the Court should deny summary judgment on all claims. Doc. 22.

## 1. Reasonable Suspicion for the Traffic Stop

In Count I of his Complaint, Plaintiff alleges the Officers violated his right to be free from unreasonable seizure by conducting a traffic stop on his vehicle without probable cause or reasonable suspicion. Doc. 1, at 8. In their Motion, Defendants maintain Plaintiff was pulled over based on the anonymous 911 caller describing the battery that was occurring at Club Cabaret

wherein she gave a description matching Plaintiff's car. Doc. 19, at 8. For support, Defendants articulate the facts and holdings in *Navarette v. California*, 572 U.S. 383 (2014) and *United States v. Drake*, 456 F.3d 771 (7th Cir. 2006), then analogize those cases to the case at bar. *Id.* at 8-12. Defendants explain the 911 caller here asked for a police response while reporting a contemporaneous event, gave descriptions matching the color of Plaintiff's car and license plate, identified the car occupant as having committed a battery against another person, and reported the man's remark that he had a gun in his car. Thereafter, the Officers found the car matching the description and effectuated a traffic stop shortly after the 911 call. *Id.* at 11. These facts render this case similar to *Navarette* and *Drake* where courts held the officers had reasonable suspicions to stop the cars that matched the description given by anonymous 911 callers. *Id.*

Plaintiff has failed to respond to Defendants' argument discussing the reasonable suspicion for the traffic stop. It is well-settled that a party waives an argument by failing to present it to the district court. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Therefore, any challenge as to the basis for the traffic stop is waived.

### 2. Excessive Force and Assault during the Traffic Stop

In Count II, Plaintiff accuses the Officers of using excessive force when they pointed their firearms at him "for the time that they did." Doc. 22, at 16. Likewise, the actions of the Officers "pointing their firearms at Plaintiff" forms the sole basis for the assault claim in Count V. Doc. 1, at 7. For clarification, there is only one material fact offered by the Parties regarding these allegations. **"Officers Althiser and Hahn drew their duty weapons and pointed them *at the vehicle* while ordering the driver out of the car."** SOF ¶ 17 (emphasis added). Notably, there are no other illuminating details.

The standard for assessing whether the amount of force an officer used was excessive or reasonable is an objective one, which depends on the facts and circumstances confronting the officer, regardless of his underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Such determination is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (citing *Graham*, 490 U.S. at 396). Considerations in determining reasonableness may include, "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*.

Saying an officer used excessive force does not make it so. Simply put, "conclusory statements not grounded in specific facts are not enough to stave off summary judgment." *King v. Ford Motor Company*, 872 F.3d 833, 840 (7th Cir. 2017). Plaintiff's "additional material facts section" does not offer any facts describing the circumstances surrounding the alleged "excessive force." Thus, the Court is left with the sole undisputed fact from Defendants' Motion, SOF ¶ 17. Plaintiff's excessive force claim is doomed from the start. There is nothing in the record stating the Officers even pointed their weapons at Plaintiff, but rather his vehicle. The Court is unaware of, and Plaintiff does not cite, any case where a court has found an officer's mere pointing of a gun at an individual's vehicle constitutes excessive force, especially in response to a 911 call reporting a potentially armed assailant. This Court declines to make this finding as well.

Even assuming the Officers pointed their weapons at Plaintiff, the Court is left with minimal details to conduct an objective inquiry as to the reasonableness of the Officers' actions. There is nothing in the record describing the length of time the Officers pointed their weapons or

any other details, such as whether Plaintiff complied immediately or whether there was any type of struggle, or that the Officers continued to point their weapons for an extended time after Plaintiff surrendered and was patted down for weapons.

The Court will address the sole argument Plaintiff makes to keep his excessive force and assault claims alive. In Plaintiff's Response, he argues the information provided from the 911 caller was not corroborated and the 911 caller did not report actually seeing a firearm. Doc. 22, at 16. As discussed above, Plaintiff already conceded that Defendants had reasonable suspicion to stop his car and he only makes a cursory remark that the caller's information was not "corroborated." Doc. 22, at 17. Even so, no reasonable juror could find the description by the caller did not sufficiently match Plaintiff's car.

Here, Defendants maintain that the Officers drew their weapons because they reasonably feared for their safety based on the 911 emergency call, which reported the occupant from Plaintiff's car just committed a battery where an individual was badly beaten and the assailant stated he had a gun in his car. Doc. 23, at 10 (citing *United States v. Rickmon*, 952 F.3d 876, 883 (7th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 540 (Apr. 5, 2021)). Therefore, "[t]he officers were not required to take their own life in their hands on the chance the 911 caller may have been mistaken[.]" *Id*. As cited by Defendants, police are allowed to point their guns at citizens when "there is reason to fear danger." *Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009) (citing *Williams v. City of Champaign*, 524 F.3d 826 (7th Cir. 2008) (holding even though the caller did not specify an alleged robber was armed, it was reasonable for the officers to assume the worst and approach the suspect's van with the "utmost caution" drawing their guns at the occupants)).

Like in *Williams*, Plaintiff's vehicle matched the description and license plate given by the 911 caller. The 911 caller confirmed that the black male who committed a battery got into a

black or blue four-door car. *See supra* fn. 2-3. Plaintiff maintains that his car is a blue sedan.
Doc. 22, at 5. The caller also stated she could see the license plate of the car had the first four
letters, "HANN," then said the letters may also be "HAHN." *See supra* fn. 2-3. It was dark out,
past 4:00 a.m., and the caller had just witnessed a violent fight, therefore any quarrel with blue
versus black or "HANN" versus "HANH" is unavailing. Other details supported the reliability of
the tip and the Officers' decision to pull over Plaintiff's car, which may have had an armed
individual in it that just committed a battery. In addition to the description of the car and license,
the Officers observed Plaintiff's car leaving the parking lot at the location the caller and this
occurred shortly after the call.

Next, Plaintiff emphasizes that Althiser testified at the motion to quash hearing that it was
reported "someone might possibly be armed with a gun." *Id.* at 10-11. However, this indication is
even stronger than the information in *Williams*, 524 F.3d at 828*, where caller did not say one way
or the other whether the robber had a gun, but the officers justifiably proceeded with the utmost
caution. In *Williams*, the officers never received a report of a potential gun but considered the
nature of the alleged crime and the matching vehicle description in their decision to point their
firearms. Additionally, in *Williams*, it did not matter that the driver was a woman even though the
robber was reported to be a man or that the security guard who alerted the police to the robbery
turned out to be incorrect that someone in the van had committed the robbery. *Id.*

Here, as to the Officers' knowledge at the time they pointed their guns, the Officers
believed the car matched the 911 caller's description, a gun *might be* present, and the occupant
reportedly committed a violent crime. It was also dark out at this time, further supporting their
decision to proceed with caution. As stated in *Williams*, "[t]he net of tort liability must not be
drawn so tight that police must choose between risking their lives and failing to investigate

adequately reports of violent crime." 524 F.3d at 829. Based on the totality of the circumstances and undisputed facts, the officers acted reasonably with their limited use of force. Even when viewing the facts in a light most favorable to Plaintiff, no reasonable jury could find otherwise. Therefore, summary judgment is granted as to Count II alleging excessive force.

Defendants argue Plaintiff's assault claim likewise fails because it is based on the premise that the Officers were not justified in pointing their firearms. Doc. 19, at 16; *see* Doc. 1, at 7. Based on Plaintiff's Response, he does not disagree that the assault claim fails if the Court grants summary judgment on Count II. Doc. 22, at 17. As indicated above, the Officers' actions were objectively reasonable, therefore the Officers were justified in their use of force. Doc. 19, at 16. Therefore, the Court agrees that Plaintiff failed to show a genuine dispute of material exists as to the assault claim and summary judgment must be granted on Count V as well.

### 3. Probable Cause to Arrest

Like in many cases, upon pulling Plaintiff over, the Officers reportedly found evidence of other crimes being committed: driving while intoxicated and driving without his headlights. Count III, Count IV, and the remaining portion of Count I are based on the Officers arresting Plaintiff for driving while under the influence and driving without headlights. The Parties focus on the intoxication charge and the Court addresses the same.

Defendants maintain that Officers had probable cause to arrest Plaintiff because they observed signs and symptoms of intoxication. Doc. 19, at 12 (citing *Seiser v. City of Chicago*, 762 F.3d 647, 656 (7th Cir. 2014); *Guiterrez v. Kermon*, 722 F.3d 1003, 1011-12 (7th Cir. 2013); *Hirsch v. Burke*, 40 F.3d 900, 903 (7th Cir. 1994); *Pecsenye v. Vill. of Park Forest*, No. 94 C 5536, 1997 WL 102534, at *3 (N.D. Ill. Mar. 3, 1997); *Krizauskas v. Pelliccioni*, No. 95 C 3248, 1996 WL 718508, at *3-4 (N.D. Ill. Dec. 10, 1996)). In his Response, Plaintiff argues that he

attested in his affidavit that he was not intoxicated and did not show signs of intoxications, therefore, his denial creates a genuine dispute of material fact as to probable cause. Doc. 22, at 13. He also asserts that the Court cannot view the video of Plaintiff at the police station to determine which party's version of the events is accurate. *Id.*

"It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest." *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992). Officers believed Plaintiff had committed the offense of driving while under the influence of alcohol, 625 ILCS 5/11-501(2) and cited/arrested him for that offense. Doc. 22-2, at 2. "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). "[A]n arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that some criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect." *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (quoting *Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010) (discussing *Devenpeck v. Alford*, 543 U.S. 146, 153–56 (2004) where the Supreme Court rejected the "closely related offense" rule) (internal quotation marks omitted).

In looking to the totality of the circumstances, it is undisputed a 911 call was made describing an individual as badly beating a person at 4:00 AM outside in the parking lot of a strip club, then stating he had a gun in his car, which he then walked towards. Dispatched Officers observed a car quickly driving out of the parking and believed that it matched the description the 911 caller. Upon coming in contact with Plaintiff, the Officers maintain they observed that his breath smelled of alcohol, his eyes were red and glassy, his slurred his words, and had difficulty

maintaining his balance. Doc. 19, at 12. These are consistent with common indicia of intoxication. *See Gutierrez v. Kermon*, 722 F.3d 1003, 1012 (7th Cir. 2013). The fact that the Officers later found a half empty bottle Hennessy in Plaintiff's car after arresting him is irrelevant to the initial probable cause inquiry. *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994) (reiterating the probable cause determination is based on the moment the arrest is made).

Plaintiff attempts to refute that he was drunk and that the Officers observed evidence of intoxication, thereby demonstrating disputes of fact exist. The Court would agree that Plaintiff's dispute as to the Officers' observations creates an issue of material fact. However, in ruling on Defendant's Motion for summary judgment, the Court is guided by the video submitted of Plaintiff's interactions with the Officers at the police station. While not relevant to the initial probable cause determination, this video forecloses his attempt to dispute portions of the Officers' observations.

Plaintiff argues that Court cannot view the video because the Court would be making an impermissible credibility determination. Doc. 22, at 13. Yet, the cases he cites do not hold that a district court is precluded from viewing video evidence submitted at summary judgment. *Id.* (citing *Morfin v. City of East Chicago*, 349 F. 3d 989 (7th Cir. 2003); *O'Leary v. Accretive Health, Inc.*, 625, 630 (7th Cir. 2011)). As Defendants assert, the Court can view this video at summary judgment as part of the record as there have been no allegations disputing the video's authenticity. *See* Doc. 23, at 7 (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")). As discussed below, the video strongly discredits

Plaintiff's assertions that the Officers had no basis for claiming they observed signs of intoxication prior to arresting him.

After careful review of the video, the Court makes the following observations regarding Plaintiff interactions with the Officers on July 22, 2018 at Creve Coeur Police Department:

The interaction with Plaintiff starts with him entering the room and immediately asking to use the bathroom. Ex. 1, at 00:42. At this point, Plaintiff's words[16] are mumbled and slurred, but he asks if the bathroom is "there" or "there" while pointing in different directions, as his body stance sways. An officer uncuffs Plaintiff and allows him to use the bathroom, which is connected to the main room. Meanwhile, one officer instructs the other officer on how to process Plaintiff, including the field tests that he should administer and questions he should ask.

After using the bathroom for about two and a half minutes, Plaintiff returns to the main room. *Id.* at 3:59. Althiser introduces himself and explains that he stopped Plaintiff because a fight broke out at Club Cabaret and his car matched a description that was given. Plaintiff continues to sway and responds "hmm?" then says "gotcha," and the rest of his words are difficult to understand. Next, the Officer informs him that he wants to do some tests with him. Plaintiff asks if that is based on what happened at Club Cabaret or what "you is tellin' me now." The Officer says it is because he is too impaired to be behind the wheel. Plaintiff says, "hmmm but that's not why you stopped me?" The Officer again explains the progression of the basis for the stop, then starts to remark that Plaintiff could barely stand on his own and almost fell backwards when he got into the car. Plaintiff interrupts by slurring "no, no, no . . . stop, stop let's go back to what you said before about Club Cabaret," then he repeatedly refutes that he was involved at what happened at Club Cabaret.

---

[16] In reviewing the video numerous times, the Court has done its best to articulate Plaintiff's words.

At this point, Plaintiff continues to make a long speech, getting louder and more argumentative with the Officers even though they are not saying much. *Id.* at 6:15. He is distinctly slurring his words and getting angry saying, "the officer is outta, outta pocket" and "lost." He repeats, "I didn't have shit to do with what happened at Club Cabaret." The other officer seems to try to calm him down by repeating his name. Plaintiff ignores the Officer. Plaintiff continues, "you could lock me up for 100 days or like for a million days but I didn't have nothin to do with what happened at Club Cabaret" and "he stopped me cuz I had my lights on . . . when it comes down to it, he didn't need to add that shit in there like I had something to do with that." *Id.* at 6:30-6:53. His makes other rambling statements, such as "you gotta know people that had shit to do with Club Cabaret," "what y'all did stop me cuz that big ass scene, like I had something to do with Club Cabaret," "what stopped me for is he can't stand." *Id.* at 7:00. Then, Plaintiff quickly repeats the preface "when it comes down to it," including, "when it comes to do it, what's your next step," "when it comes down it, you gonna arrest me or let it go," "when it comes down to it, don't try to run a gang on me." Then, he starts angrily stating, "I know you and this lil motherfucker tried to talk to my girl outside my car . . . she got a ride with a motherfucker . . . ya'll saw a pretty ass black bitch y'all don't get over here . . . when it comes down to it, save that bullshit." *Id.* at 7:30-7:40.

After this rant, an officer tries to change the subject by asking if Plaintiff was in the army, which infuriates him, so his voice gets louder, yelling at the Officer for trying to "get to know" him when he's also trying to arrest him "with this motherfucker right now." *Id.* at 7:43-8:05. The Officer tells him to shut his mouth. Plaintiff tells them "go ahead, go ahead" and points his right hand in the air, oddly whispering "speak the point." The Officer responds, "we can smell the booze coming off you man and you almost fell out of the car." Plaintiff asks if they followed all

of the cars outside of Club Cabaret. The Officer answered "no, we followed you because you were involved in a fight," which again infuriates Plaintiff. He yells while slurring, "I didn't start no fight." *Id.* at 8:55. At this point, Hahn sits down across the room. The Officer again asks if he'll complete field sobriety tests, and Plaintiff responds, "hell fuck no." *Id.* at 8:58.

Althiser then informs him that he is placing him under arrest for DUI while Plaintiff sits down and repeatedly yells "goooood." *Id.* at 8:59-9:08. Althiser then tells him, stay seated and "shut your fucking mouth," to which Plaintiff responds, "I'll talk all I want, what you gonna do?" Althiser then repeatedly instructs him, "zip up your fly," while Plaintiff responds again "what you gonna do, you gonna look at my dick, what are you gay?" *Id.* at 9:07-9:17. Althiser says, "what if I am, you got a problem with that?" Plaintiff answers "no . . . you keep looking at it like you want that shit," then refuses to zip his pants. *Id.* at 9:17-9:24. Althiser responds, "no, your fly is down because you went to the bathroom and a normal human being who is not drunk . . . ." Plaintiff interrupts him with words that become unintelligible, and his slur is pronounced. It sounds like Plaintiff is asking the Officer if has a problem that Plaintiff does not have socks on. Athiser again tells him to sit and be quiet while Plaintiff slurs, "no, no, no . . . I ain't gotta sit." *Id.* at 9:20-9:38. At this point, Hahn rises from his seat across the room and walks over asking if Althiser is "all good." *Id.* at 9:34. Althiser tells Plaintiff to spin around, and he says "nah." Althiser starts raising his voice at Plaintiff telling him he is not going to tell him how to do his job. Plaintiff continues to ramble until Hahn yells "stand up, stand up right now, if I ask a third time, you're gonna be on the ground." *Id.* at 9:45-9:51. Hahn then cuffs Plaintiff and brings him back to a room out of view.

At this point, the Officers are not saying anything, but Plaintiff starts yelling about Club Cabaret again, people trying to talk to his girlfriend, and other general complaints about people

16

at the club. *Id.* at 10:00-12:45. He then screams, escalating his voice higher and higher, "maybe I didn't have my fucking lights on but I was leavin the mothafuckin club . . . goin back over to Peoria where I'm from and these pussy ass punk ass bitch ass motherfuckers . . . (untelligible words) . . . you sorry assess." *Id.* at 12:38-12:59. At that point, one Officer tells Plaintiff to sit down and shut his mouth. *Id.* at 12:58. You can hear a brief scuffle of a few seconds after which Plaintiff says, "do it, kill me now." The Officer responds, "I'm not gonna kill you." Then, the other officer starts saying Plaintiff's name, telling him to stop talking, and says maybe you weren't involved in what happened at the club "but the fact still remains you drove on main street without your lights on, okay . . . it's clear you've been drinking." *Id.* at 13:13-13:45. Plaintiff calmly responds "mmhmm," "maybe I have, maybe I haven't." *Id.* at 13:44-13:49. The Officer responds, "that is what the test will show" and asks again if he wants to take the test. During this time, Plaintiff is slurring and muttering unintelligible words. Plaintiff again says "no" to the test and the Officers tell him they are going to take him to the car, to which he says "okay." *Id.* at 14:04. The portion of the video showing Plaintiff ends at this point.

In the face of this evidence, Plaintiff's affidavit asserts he did not consume any alcohol at Club Cabaret or on July 21, 2018 through July 22, 2018, and that he was not intoxicated at any point on July 22, 2018. Doc. 22-1, at ¶ 3, 4, 5. He also states that he did not have an odor of alcohol on his breath, slurred speech, glassy or red eyes, or difficulty maintaining his balance or have poor balance on July 22, 2018. *Id.* at ¶ 7, 8, 9 10.

Throughout the video it is clear Plaintiff appears to be under the influence of something. No reasonable juror could find otherwise. Viewing the facts in the most favorable light towards a nonmoving party does not extend to drawing inferences that are unreasonable or only supported by "speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008).

In particular, Plaintiff repeatedly slurs his words, sometimes speaks incoherently, and is unprovoked, yet belligerent with the Officers at times. The majority of the video is Plaintiff ranting about different topics, in particular, his adamant denial of involvement in the fight at Club Cabaret. As to his balance, the Court understands that unintoxicated individuals may naturally sway at times, however, Plaintiff's swaying is especially pronounced when he raises his arms. *See e.g.*, Ex. 1 at 00:59, 04:27-5:04, 5:15-5:20, 6:08, 6:52, 7:01, 7:31, 8:21, 8:45.

Based on the video, the Court does not credit Plaintiff for his assertions that he did not slur his words or have difficulty maintaining his balance. Plaintiff does not offer a different interpretation of the video or claim he does not appear intoxicated throughout it. Plaintiff does not argue that he became intoxicated during the time he was driven to the station or assert that he had a reaction to a prescribed medication. Therefore, the only reasonable inference to be drawn is that Plaintiff exhibited these signs when the Officers pulled him over. Thus, it is undisputed that Plaintiff was slurring his words and had trouble maintaining his balance when officers pulled him over around 4:00 a.m. after a 911 caller reported that he badly beat a person outside of Club Cabaret and potentially had a weapon. Based on the totality of the circumstances, no reasonable juror could find the Officers lacked probable to arrest Plaintiff for driving while intoxicated.

Evidence obtained after the arrest, which would be admissible at trial, further supports the Officers' observations. It is undisputed the Officers found a half bottle of Hennessy alcohol in his car. This evidence supports their observations of smelling liquor. It also could have been the basis for another citation, violation of an Illinois open container law, 625 ILCS 5/11–502(a). *Seiser v. City of Chicago*, 762 F.3d at 655 ("Illinois courts have repeatedly held that a police officer may reasonably infer from the discovery of a beer or liquor container—even an empty

container—in or near an individual's car that the bottle had contained alcohol and had been open while the defendant was driving.").

Notably, Plaintiff also fails to discuss any case where a court applied the probable cause inquiry to a DUI arrest at summary judgment. Instead, he relies on *Morfin*, 349 F. 3d at 989, which involved probable cause determinations for resisting law enforcement, obstruction of justice, and disorderly conduct. As to Plaintiff's reliance on this case for the proposition that the Court should not chose one version of the facts over the other, *Morfin* did not have the benefit of a video, which has utterly discredited portions of Plaintiff's version of the facts in this case.

Even if Plaintiff was not in fact intoxicated, that does not negate the probable cause determination because the inquiry is based on the Officers' reasonable belief at the time of arrest. *Hirsch*, 40 F.3d at 904 (holding a later medical report concluding the individual did not have alcohol in his blood did not negate probable cause). The answer to that question remains unanswered. Plaintiff refused to perform a breathalyzer test or field sobriety tests. In the end, regardless of what Plaintiff was or was not under the influence of, it was his misfortune that someone called the police and gave a description matching his car, which led to the traffic stop. That stop and his subsequent arrest did not violate his Fourth Amendment rights. Therefore, summary judgment is granted as to Count I.

### 4. Due Process, Malicious Prosecution, and Indemnification

Plaintiff's fabrication of evidence claim in Count III asserts the Officers completed false reports to justify Plaintiff's traffic stop and arrest. Doc. 1, at 5. As discussed above, at summary judgment Plaintiff only challenges the arrest. Thus, the remaining portion of Count III rests on the premise that the Officers lied about their observations as to Plaintiff's appearance and their beliefs that he was under the influence. The Court has doubts that Plaintiff can maintain this due

process claim since the motion to quash his state court charges was granted. *See Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) ("A plaintiff cannot state a due process claim "by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.'") (quoting *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003)). Regardless, as discussed above, the video of Plaintiff at the police station forecloses Plaintiff's attempt to manufacture a dispute of fact as to the Officers' main observations. Therefore, a grant of summary judgment is appropriate on Count III.

As to the malicious prosecution claim, under Illinois law, Plaintiff must establish: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 745 (N.D. Ill. 2016) (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). Absence of any one of these requirements bars a plaintiff from pursuing the claim. *Id.* Here, as indicated above, the Court finds the Officers had probable cause as a matter of law, therefore, Plaintiff's claim in Count IV is doomed for failure to show an absence of probable cause.

Accordingly, the only remaining claim is against the City of Creve Coeur for indemnification pursuant to 745 ILCS 10/9-102. "A local public entity is not liable where an employee is not liable." *Vill. of Bloomingdale v. CDG Enters., Inc.*, 752 N.E.2d 1090, 1100 (Ill. 2001) (citing 745 ILCS 10/2‑109). Because summary judgment has been granted on all other claims, it is granted as to Count VI as well.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion (Doc. 19) for Summary Judgment is

GRANTED.


Signed on this 30th day of August, 2021.

<u>s/James E. Shadid</u>
James E. Shadid
United States District Judge